# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELVIN KNIGHT,            )

                                        )      Civil Action No. 12 – 984

               Plaintiff,       )

                                          )      District Judge David S. Cercone

                   v.              )      Chief Magistrate Judge Lisa Pupo Lenihan

                                          )

JOHN R. WALTON, *et al.*,       )

                                          )      ECF Nos. 47, 50

               Defendants.       )

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that the Motion to Dismiss filed by the Nurse Defendants (ECF No. 47) be granted as to Count XVIII against Nurse Harr. It should be denied as to Count XIX against Nurse Kincaid.

It is further recommended that the County Defendants' Motion to Dismiss (ECF No. 50) be granted as to Counts I and XV (access to courts); Count XVI (excessive force), Counts II and IV (failure to intervene); Counts V, X, XI, XIV (retaliation); Counts III and XVII (due process); Count XX (failure to train subordinates); Counts XXI and XXII (conspiracy); and Count XXIII (preclusion to exhaust administrative remedies). It is recommended that their motion be denied as to Counts VI, VIII, XII (excessive force); Counts VII, IX, XIII (failure to intervene); and Count XIX (deliberate indifference to physiological needs). The motion should be denied without prejudice as to Count XXIV (mental and emotional injury).

Defendant J. Williams should be dismissed without prejudice for Plaintiff's failure to prosecute. Amendment of the Complaint as to the Counts where Plaintiff has failed to state claims would be futile and such relief should not be granted.

## II. <u>REPORT</u>

Plaintiff Melvin Knight ("Plaintiff") is an inmate currently incarcerated at the State Correctional Institution at Greene. He initiated this *pro se* prisoner civil rights action on July 13, 2012, and his Second Amended Complaint ("Complaint"), which is now before the Court, was filed on June 5, 2013. (ECF No. 36.) In his Complaint, Plaintiff asserts violations of his First, Eighth and Fourteenth Amendment rights. His claims arise out of an incident that occurred while he was confined in the Westmoreland County Prison in Greensburg, Pennsylvania in February 2012. Defendants include: John R. Walton (Warden); Steven Cmar (Deputy Warden); Jennifer Harr (Nurse); Sandra Kincaid[1] (Nurse); and the following prison guards, Floyd Murphy, Benard Funk, Jr., Karl D. Ledbetter, Joshua A. Kudlik, Robert Carty, Ronald J. Burkhart, Donald Rairigh, Robert Wright, Brad V. Tomasello, George Lowther, J. Williams, and J. Keenan. Nurses Harr and Kincaid ("Nurse Defendants") filed a Motion to Dismiss on August 9, 2013. (ECF No. 47). The remaining Defendants ("County Defendants")[2] filed a Motion to Dismiss on August 19, 2013. (ECF No. 50.) Plaintiff filed responses in opposition to both Motions (ECF Nos. 57, 61), and the County Defendants filed a reply to Plaintiff's opposition (ECF No. 65). The Motions are now ripe for review.

### A. Background

The following is a summary of the allegations in Plaintiff's Complaint.

---

[1] Inaccurately identified in the Complaint as "Nurse Kincaidy".

[2] Defendant J. Williams has not yet been served and his whereabouts are unknown because he is no longer employed by the Westmoreland County Prison.

Counts I-IV, XIV, XV, XVII of Plaintiff's Complaint concern a cell search that occurred on February 10, 2012. Plaintiff alleges that Defendant Tomasello ordered the cell search in retaliation for an incident that involved Plaintiff requesting a grievance form so that he could complain about the conditions of his unit and about an assault by Tomasello that occurred a week earlier. (Count XIV-retaliation.) Plaintiff alleges that during the cell search on February 10, 2012, Defendants Ledbetter and Funk destroyed his legal and personal property (Counts I-access to court, III-due process) and that Defendants Murphy, Kudlik and Carty failed to intervene to stop the destruction (Counts II-failure to intervene, IV-failure to intervene). He claims that Defendant Tomasello is liable for the destruction of his property because he ordered the cell search that resulted in its destruction and that he was denied due process because he was not provided with a pre or post-deprivation hearing. (Counts XV-access to court, XVII-due process.)

In Counts V-X Plaintiff alleges that, in retaliation for complaining about the destruction of his property, Defendants Murphy and Kudlik lifted him up in the air, carried him into his cell and slammed him face-first into the metal frame of his bunk-bed. (Counts V-retaliation, VI-excessive force.) Plaintiff alleges further retaliation by Defendant Murphy when he grabbed the back of his head, slammed it against the wall and on the metal frame numerous times, and twisted and turned his wrists while he was handcuffed. (Counts VIII-excessive force, X-retaliation.) He claims that Defendants Ledbetter, Funk, Carty and Burkhart failed to intervene in Murphy and Kudlik's use of excessive force (Count VII-failure to intervene) and that they, including Defendants Kudlik, Wright and Rairigh, also failed to intervene in Murphy's subsequent use of excessive force (Count IX-failure to intervene). He also claims that Defendant Tomasello used excessive force by ordering the cell search as a ploy so that Murphy could physically assault him. (Count XVI-excessive force.)

In Count XI, Plaintiff alleges that after the assault he was strapped to a restraint chair, taken to the gym and left there for more than seven hours without water, exercise or use of the bathroom and that this was in retaliation, by Defendants Murphy, Kudlik, Ledbetter, Carty, Burkhart, Wright and Rairigh, for him complaining about Murphy's "assault" to Nurses Harr and Kincaid when they were treating his injuries. (Count XI-retaliation.) Interestingly, he also alleges that the guards would not let the Nurses assess or treat him while he was in the restraint chair but also alleges that the Nurses, and Defendants Williams and Keenan, were deliberately indifferent to his medical and physiological needs when he was strapped to the chair. (Counts XVIII-deliberate indifference, XIX-deliberate indifference.) He claims that Defendants Murphy, Kudlik, Ledbetter, Carty, Burkhart, Wright and Rairigh used excessive force by pulling the straps on the restraint chair too tight, which hurt his right wrist that had already been injured by Murphy. (Count XII-excessive force.) He further claims that they all failed to intervene in each other's use of excessive force. (Count XIII-failure to intervene.)

Plaintiff alleges that Defendants Walton, Cmar, Tomasello, Lowther Ledbetter, Murphy and Keenan all failed to properly train their respective subordinates and that proper training would have prevented the physical assaults and the failure to intervene in the assaults. (Count XX-failure to train.)

He further alleges that Defendants Walton, Cmar, Murphy, Funk, Burkart, Wright, Rairigh, Tomasello, Lowther, Ledbetter and Carty all engaged in a conspiracy to deprive him of his constitutional right to access the court, to due process, and to be free from cruel and unusual punishment. (Count XXI-conspiracy.) Additionally, he alleges that Defendants Kincaid, Williams and Keenan engaged in a conspiracy by documenting that he was in the restraint chair for only four hours when it was really seven hours. (Count XXII-conspiracy.)

Finally, he alleges that Defendants Walton and Cmar prohibited him from exhausting his administrative remedies by refusing to provide him with a prison grievance form after he filed a written request for one. (Count XXIII-preclusion from exhausting administrating remedies.) He states that all Defendants caused him mental and emotional injury. (Count XXIV-mental and emotional injury.)

**B. Standard of Review**

Defendants have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of

the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; see also Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; see also Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v.

Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

**C. Discussion**

Although not expressly stated in the Complaint, it appears that Plaintiff was a pre-trial detainee at the Westmoreland County Prison during the time the alleged events occurred in February 2012. According to public records, Plaintiff was not sentenced until August 31, 2012. Commonwealth v. Knight, Docket No. CP-65-CR-0000851-2010 (Westmoreland Cty. Ct. of Com. Pleas).

Pretrial detainees retain liberty interests grounded in the Due Process Clause of the Fourteenth Amendment. *See* Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee has been deprived of a liberty interest without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979); Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42. In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, the proper inquiry is whether those conditions amount to punishment of the detainee. In Wolfish, the Court held that to discern impermissibly punitive conditions of

7

detention, the courts must ask whether the challenged condition "is reasonably related [and proportionate] to a legitimate governmental objective." Id. at 538.

   1.   Access to Court (Counts I, XV)

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[3] The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement." Bounds v. Smith, 430 U.S. 817, 822 (1977). Officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.

Bounds held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. But the right of access to the courts is not unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or

---

[3] The right of access to the courts is an aspect of the First Amendment right to petition. McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Rests. v. NLRB, 461 US. 731, 741 (1983). Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974).

defense.  *See* <u>Lewis</u>, 518 U.S. at 348-51, 354-55; <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  <u>Lewis</u>, 518 U.S. at 351.

In Count I, Plaintiff alleges that Defendants Ledbetter and Funk tore up his legal property during the cell search on February 10, 2012, and that this violated his right to access the court by hindering his ability to aid and assist his criminal defense attorney in the preparation of his defense.  The legal property allegedly destroyed consisted of letters from his criminal attorney and copies of letters to his attorney, research documents, notes, caselaw and other legal information.  Plaintiff avers that he was going to discuss with his attorney an alternative to pleading guilty to first degree murder and that he had authored a list of mitigating evidence for presentation at the degree of guilt hearing because he believed his attorney to be unfamiliar with the purpose of a degree of guilt hearing.  He claims that, without his legal materials, he was precluded from initiating a degree of guilt hearing.  He also claims that he was not allowed to mail his legal property home to his family members before it was destroyed and that his attorney decided to cease sending him anymore mail due to the potential for its destruction or because it might be shared with the prosecution.

As to Count I, Plaintiff has failed to state a claim.  Plaintiff admits that he was represented by an attorney, Jeffrey Miller, who was handling his criminal case.  The rule is that where an inmate is represented by counsel, his right of access to the court is satisfied as a matter of law.  <u>Harris v. United States Marshal Serv.</u>, No. 10-328J, 2011 U.S. Dist. LEXIS 90677, at

*12 (W.D. Pa. Apr. 6, 2011) (citing cases). Moreover, the right of access to the courts does not include the right to effectively litigate once in court. Lewis, 518 U.S. at 354. Plaintiff's complaints regarding his attorney's competence in connection with his capital case must be addressed through direct and post-conviction appeals. He cannot collaterally attack his capital sentence through a civil rights action.

In Count XV, Plaintiff alleges that Defendant Tomasello, by virtue of his position, violated his right to access the court because he was the one who ordered the cell search that resulted in the destruction of his legal property. This fails to state a claim because a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). While he may have ordered the cell search, Defendant Tomasello had no personal involvement in the actual destruction of Plaintiff's legal property and Plaintiff has not alleged facts to support a theory of supervisory liability on the part of Defendant Tomasello in that he ordered the destruction of Plaintiff's legal property or knew the guards would destroy the property and acquiesced in their conduct. *See* A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) ("[A] supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.") (footnote omitted). These Counts should therefore be dismissed.

2. Excessive Force (Counts VI, VIII, XII, XVI)

In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in Whitley v. Alberts, 475 U.S. 312 (1986): "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In answering this question, a court's analysis "must be driven by the extent of the force and the circumstances in which it [was] applied[,] not [merely] by the resulting injuries" to a plaintiff. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). While the Third Circuit Court of Appeals recently declined to decide whether a pretrial detainee's claim regarding an alleged isolated incident of excessive force should be analyzed under the Eighth or the Fourteenth Amendment standard, it did note that in the past it had applied the Eighth Amendment standard to a claim by a pretrial detainee that arose in the context of a prison disturbance rather than the standard announced in Bell v. Wolfish, 441 U.S. 520 (1979). *See* Carson v. Mulvihill, 488 F. App'x 554, 562 (3d Cir. 2012) (citing Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000)). Even though pretrial detainees are subject to the protections of the Fourteenth Amendment, district courts in this circuit apply the Eighth Amendment standard when analyzing a pretrial detainee's claim of excessive force because "the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987).

In determining whether a defendant has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotations and citation omitted). The extent of any injuries that an inmate suffers is relevant, but "does not end" this analysis. Hudson, 503 U.S. at 7. Consideration of these factors permit a

11

court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In Count VI, Plaintiff alleges excessive use of force by Defendants Murphy and Kudlik when they lifted him up in the air, carried him into his cell and slammed him face-first into the metal frame of his bunk-bed. In Count VIII, Plaintiff alleges excessive use of force by Defendant Murphy when he grabbed the back of Plaintiff's head, slammed it against the wall and on the metal frame numerous times and twisted and turned his wrists while he was in handcuffs. In Count XII, Plaintiff alleges excessive use of force by Defendants Murphy, Kudlik, Ledbetter, Carty, Burkhart, Wright and Rairigh when they pulled the straps on the restraint chair too tight.

Defendants argue that they had to use force because Plaintiff was causing a disruption in the unit during the cell search and that they decided to use the restraint chair in order to temper the amount of force they had to use. Thus they argue that their use of force was not applied maliciously or sadistically but rather in an effort to maintain order in the unit. Plaintiff states that his injuries included swelling, cuts and wrist pain and Defendants argue that these injuries did not require significant treatment.

It is recommended that Defendants' Motion to Dismiss be denied as to these Counts. Plaintiff's allegations are sufficient to state a plausible claim for relief for purposes of a motion to dismiss. The extent of force that was applied and whether it was applied in a good faith effort to maintain discipline is something that can be reviewed at the summary judgment stage after the parties have conducted discovery.

In Count XVI, Plaintiff alleges excessive use of force by Defendant Tomasello because he ordered the cell search which led to the excessive use of force in the aforementioned instances. Plaintiff has failed to state a claim against Defendant Tomasello because he lacked any sort of personal involvement in the alleged uses of excessive force and he cannot be liable simply by virtue of his position. *See*, *supra*. Furthermore, Plaintiff has failed to sufficiently allege facts to support a theory of supervisory liability as to Defendant Tomasello. Id. This Count should therefore be dismissed.

### 3. Failure to Intervene (Counts II, VII, IX, XIII)

A prison guard's failure to intervene in another's use of excessive force can be the basis of liability under section 1983. In order for liability to attach, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002);[4] *see also* McCullough v. Miller, No. 06-514, 2008 U.S. Dist. LEXIS 72534, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008) (Lancaster, J.). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." McCullough, 2008 U.S. Dist. LEXIS 72534, 2008 WL 4361254, at *9 (citing Swinyer v. Cole, No. C04-5348, 2006 U.S. Dist. LEXIS 48038, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); Mitchell v. James, No. 4:04CV1068, 2006 U.S. Dist. LEXIS 3140, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

---

[4] Bistrian v. Levi, 696 F.3d 352, 371-72 (3d Cir. 2012) (applying Mesinger to a failure to intervene claim brought by a pretrial detainee).

In Counts II and IV, Plaintiff alleges that Defendants Murphy, Kudlik and Carty failed to intervene when Defendants Ledbetter and Funk destroyed his legal and personal property. However, "there must exist an underlying constitutional violation" for there to be a failure to intervene. Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005); *see also* Sanders v. City of Union Springs, 207 F. App'x 960, 965-66 (11th Cir. 2006). Because Plaintiff has not stated an access to court or due process claim with regard to the destruction of his property, there was no underlying violation and hence no duty to intervene by the Defendants. These Counts should therefore be dismissed.

In Counts VII and IX, Plaintiff alleges that Defendants Ledbetter, Funk, Carty, Burkhart, Kudlik, Wright and Rairigh failed to intervene in the alleged uses of excessive force during the cell search. In Count XIII, Plaintiff alleges that Defendants Murphy, Kudlik, Ledbetter, Carty, Burkhart, Wright and Rairigh failed to intervene in the alleged use of excessive force when he was being strapped to the restraint chair.

Because the Court should wait until summary judgment to decide whether excessive force was in fact applied in these instances, it should similarly wait until summary judgment to decide whether Defendants had a duty to intervene and failed to despite having a reasonable opportunity to do so. Therefore, Defendants' Motion to Dismiss should be denied as to these Counts.

    4. Retaliation (Counts IV, V, X, XI, XIV)

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a

retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[5] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[6] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once all three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

Plaintiff alleges numerous instances of retaliation. In Count V, Plaintiff alleges that after he complained about the destruction of his legal and personal property, Defendants Murphy and Kudlik lifted him up in the air, carried him into his cell, and slammed him face-first onto the metal frame of his bunk-bed. Then he alleges in Count X that Defendant Murphy banged his head against the wall and on the edge of the metal frame and violently twisted and turned his wrists while he was handcuffed. In Count XI, Plaintiff alleges that Defendants Murphy, Kudlik, Ledbetter, Carty, Burkhart, Wright and Rairigh left him in the restraint chair for seven hours for complaining to medical staff about Murphy's assault on him.

---

[5] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[6] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

All of the above allegations fail to state a claim because Plaintiff's oral complaints do not satisfy the first element of a retaliation claim. Plaintiff did not engage in constitutionally protected conduct by voicing his complaints about the destruction of his property while it was occurring or about the alleged assault to medical staff while he was being treated for injuries. *See* Johnson v. Carroll, No. 2:08-cv-1494 KJN P, 2012 U.S. Dist. LEXIS 79380 at *101-104 (E.D. Cal. June 7, 2012) (citing cases finding that an inmate's verbal challenges or rantings to correctional staff are not within the ambit of First Amendment protection).

In Count XIV, Plaintiff alleges that Defendant Tomasello ordered the cell search as a ruse so that Defendant Murphy could assault him. He alleges that Defendant Tomasello did so in retaliation because he requested a grievance form in order to complain about a prior assault by Tomasello and about the conditions of his unit. This also fails to state a retaliation claim because Plaintiff's allegations do not suggest that the alleged cell search and ensuing destruction of his property were sufficient to deter a prisoner of ordinary firmness from requesting or filing non-frivolous grievances. *See* Grohs v. Hayman, No. 09-5273, 2010 U.S. Dist. LEXIS 56616, at *23 (D.N.J. June 8, 2010). These Counts should therefore be dismissed.

5. Deliberate Indifference to Medical/Physiological Needs (Counts XVIII, XIX)

It is clearly established that claims of inadequate medical care by pretrial detainees are "evaluate[d] . . . under the Due Process clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment."[7] Thrower v. Alvies, 425 F. App'x 102, 104 (3d Cir. 2011) (citing Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2004)). The Third

---

[7] The Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Circuit has also stated that the "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." Id. at 105 (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003)). Thus, courts apply the Eighth Amendment standard to determine whether a pre-trial detainee's rights were violated. See Natale, 318 F.3d at 582 (finding no reason to apply a different standard to a prisoner's claims of inadequate medical care under the Eighth Amendment). See also Lenhart v. Pennsylvania, No. 13-1173, 2013 U.S. App. LEXIS 11723, 2013 WL 2479409 (3d Cir. June 11, 2013) ("[A] pretrial detainee is not entitled to Eighth Amendment protections, but nevertheless a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care[.]") (citing Natale, 318 F.3d at 581).

In order to state a claim for denial of medical treatment, a plaintiff must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." Estelle v. Gamble, 429 U.S. 97 (1978)

A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical

treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

In Count XVIII, Plaintiff alleges that Defendant Nurse Harr was deliberately indifferent to his medical needs because she did not provide him with medical attention after the alleged assault. Plaintiff belies his own claim because he also alleges that certain Defendants left him in the restraint chair for seven hours in retaliation for complaining to medical staff *when he was receiving treatment for his injuries*. He also states that his injuries consisted of only swelling and cuts but that he was provided with a pain killer for his discomfort. Plaintiff does not allege that his injuries were serious enough to require immediate medical attention but he alleges that he was provided with it nonetheless. His allegations fail to state a claim against Nurse Harr and therefore this Count should be dismissed.

In Count XIX, Plaintiff alleges that Defendants Kincaid, Williams and Keenan were deliberately indifferent to his physiological needs because they did not allow him to use the bathroom or exercise or offer him water while he was in the restraint chair for seven hours. Plaintiff alleges that Defendants documented him as being in the chair for only four hours. Therefore, the record needs to be further developed as to this Count. This should be an issue for summary judgment.

6.  Due Process Re Destruction of Property (Counts III, XVII)

In Counts III and XVII, Plaintiff alleges that he was denied procedural due process in the form of a pre and post-deprivation hearing regarding the destruction of his personal and legal property.

The United States Supreme Court has held that a prisoner's procedural due process claim for the destruction of his property fails "if a meaningful post-deprivation remedy is available for

18

the loss." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Furthermore, it is not relevant whether the alleged loss of property occurred as a result of negligent or intentional conduct. Id., 468 U.S. at 533.

The Third Circuit Court of Appeals has summarily dismissed prison due process claims where plaintiffs have had state tort suits for conversion of property and prison grievance procedures available to them. *See* Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010) (citing Tillman v. Lebanon County Corr., 221 F.3d 410, 422 (3d Cir. 2000). Adequate remedies were available here and therefore these Counts should be dismissed.

7. Failure to Train Subordinates (Count XX)

In limited circumstances, a supervisor can be liable under section 1983 in his or her individual capacity for failure to train. Under this theory of liability, the plaintiff must show that the alleged "failure to train amounts to deliberate indifference to the rights of persons with whom the [untrained persons] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). However, "[t]he scope of failure to train liability is a narrow one." Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001). The plaintiff must do more than argue that the "constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). The plaintiff must specifically identify what the superior failed to do that shows his or her deliberate indifference. Id. "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Id.

Under the deliberate indifference standard, for a supervisor to be liable for failure to train his or subordinates, the plaintiff must (1) identify the specific supervisory practice or procedure

that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Brown, 269 F.3d at 216 (citing Sample, 885 F.2d at 1118).

In Count XX, Plaintiff alleges that Defendants Walton, Cmar, Tomasello, Lowther, Ledbetter, Murphy and Keenan are liable for failing to properly train their subordinate employees, which would have prevented the alleged physical assaults and the failure to intervene to stop the physical assaults. Plaintiff's claim, however, is conclusive; he has not supported it with any factual allegations. He has not identified any specific practice or procedure that the Defendants failed to teach their subordinates or how it would have prevented the alleged assaults from occurring. He has also not alleged deliberate indifference on the part of these Defendants in that they intentionally chose not to properly train their employees in order to cause constitutional violations. To the extent he alleges that the facility did not train its guards in the proper application of force, he has also failed to state a claim because he has not alleged a pattern of excessive force violations.[8] Plaintiff has not stated a plausible claim for relief and this Count should therefore be dismissed.

---

[8] A municipality's failure to properly train its employees and officers can create an actionable violation of a plaintiff's constitutional rights under § 1983. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Where the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires that the omission amount to "deliberate indifference" to a constitutional right. See Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (2011); see also Doe v. Luzerne Cnty., 660 F.3d 169, 179-80 (3d Cir. 2011) (citing City of Canton, 489 U.S. at 388). The failure to adequately train correctional officers or the failure to implement policies and procedures aimed at preventing inmate violence can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations of the rights of others because only then can the policymaker's subjective awareness of the policy's failures be reasonably inferred. Connick, 131 S. Ct at 1359; Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citing Bryan County v. Brown, 520 U.S. 397, 408-09 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers

8.  Conspiracy (Counts XXI, XXII)

In order to demonstrate a section 1983 civil conspiracy, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993); *see also* Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009). While the Third Circuit is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . ., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 1009) (quoting Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see also* Adams v. Teamsters Local 115, 214 F. App'x 167, 175 (3d Cir. 2007) (a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action).

In Count XXI, Plaintiff alleges that Defendants Walton, Cmar, Murphy, Funk, Burkhart, Wright, Rairigh, Tomasello, Lowther, Ledbettery and Carty conspired to deprive him of his right to access the court, to due process and to be free from cruel and unusual punishment. In Count XXII, Plaintiff alleges that Defendants Kincaid, Williams and Keenan conspired to deprive him

---

can hardly be said to have deliberately chosen a training program that will cause a violation of constitutional rights." Connick, 131 S. Ct. at 1360. Nonetheless, a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." Connick, 131 S. Ct. at 1361; *see also* Christopher v. Nestleroade, 240 F. App'x 481, 489-90 (3d Cir. 2007). Finally, the argument that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability." City of Canton, 489 U.S. at 390-91. The plaintiff must "prove that the deficiency in training actually caused [the constitutional violation at issue]." Doe, 660 F.3d at 180 (quoting City of Canton, 489 U.S. at 391.)

of his right to be free from cruel and unusual punishment when they documented that Plaintiff was in the restraint chair for four hours when he was actually in the chair for seven hours.

Plaintiff has alleged nothing more than a conspiracy claim based on mere speculation. This is insufficient to state a claim. Therefore these Counts should be dismissed.

9. Preclusion to Exhaust Administrative Remedies (Count XXIII)

In Count XXIII, Plaintiff alleges that he was precluded from exhausting his administrative remedies because the shift commanders would not provide him with a grievance form despite his written and verbal requests. Even assuming this to be true, these allegations fail to state a viable constitutional claim. *See* Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (existence of a prison grievance procedure does not confer any substantive right upon inmates); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F. Supp. 284 (W.D. Va. 1994) (inmates do not have a constitutionally protected right to a grievance procedure); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights); Burnside v. Moser, 138 F. App'x 414, 415-416 (3d Cir. 2005). This Count should be dismissed.

10. Mental and Emotional Injury (Count XXIV)

Pursuant to 42 U.S.C. § 1997e(e), no civil action may be brought for mental or emotional injury suffered while in custody without a prior showing of physical injury. Plaintiff has alleged a physical injury so the Defendants' Motion to Dismiss should be denied without prejudice to reassert this issue on summary judgment.

11. Defendant J. Williams

The United States Marshal was unable to effectuate service on Defendant J. Williams. (ECF No. 44.) Counsel for the County Defendants informed the Court that J. Williams no longer works at the Westmoreland County Prison and they are unaware of his whereabouts. Plaintiff was ordered to provide the Court with accurate service information for this Defendant no later than November 4, 2013, and he was informed that the failure to do so may result in dismissal of this Defendant for failure to prosecute. (Text Order dated October 2, 2013.) Plaintiff did not provide the information.

Under the Federal Rules of Civil Procedure, if a service of summons and complaint is not made upon a defendant within 120 days of filing of the complaint, the court may dismiss the complaint without prejudice as to that defendant. *See* Fed.R.Civ.P. 4(m). The Complaint in this matter was filed against Defendant J. Williams on June 5, 2013, well over 120 days ago. When there has been a failure to timely serve a complaint upon a defendant as contemplated under Federal Rule of Civil Procedure 4(m), a court, after giving the plaintiff appropriate notice, may dismiss the complaint for failure to comply with Rule 4(m) and for failure to prosecute under Federal Rule of Civil Procedure 41(b). *See* Liu v. Oriental Buffet, 134 F. App'x 544, 546-47 (3d Cir. 2005); Gebhardt v. Borough of Island Heights, 2007 U.S. Dist. LEXIS 90119, 2007 WL 4355465, at *1 (D. N.J. Dec. 7, 2007).

Because Plaintiff has not provided service information, and the whereabouts of this Defendant remains unknown, it is recommended that he be dismissed from this action without prejudice at this time.

12. Amendment of the Complaint

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless

doing so would be "inequitable or futile." <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors</u>, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

Careful review of the Complaint and the Motions to Dismiss reveal that amendment by Plaintiff as to the Counts where he has failed to state a claim would be futile. Such relief should not be granted.

## III.    <u>CONCLUSION</u>

For the aforementioned reasons, it is respectfully recommended that the Motion to Dismiss filed by the Nurse Defendants (ECF No. 47) be granted as to Count XVIII against Nurse Harr. It should be denied as to Count XIX against Nurse Kincaid.

It is further recommended that the County Defendants' Motion to Dismiss (ECF No. 50) be granted as to Counts I and XV (access to courts); Count XVI (excessive force), Counts II and IV (failure to intervene); Counts V, X, XI, XIV (retaliation); Counts III and XVII (due process); Count XX (failure to train subordinates); Counts XXI and XXII (conspiracy); and Count XXIII (preclusion to exhaust administrative remedies). It is recommended that their motion be denied as to Counts VI, VIII, XII (excessive force); Counts VII, IX, XIII (failure to intervene); and Count XIX (deliberate indifference to physiological needs). The motion should be denied without prejudice as to Count XXIV (mental and emotional injury).

Defendant J. Williams should be dismissed without prejudice for Plaintiff's failure to prosecute. Amendment of the Complaint as to the Counts where Plaintiff has failed to state claims would be futile and such relief should not be granted.

24

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 21, 2014.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Melvin Knight
KR 9608
SCI Greene
175 Progress Drive
Waynesburg, PA 15370
*Via First Class Mail*

Counsel of Record
*Via ECF Electronic Mail*